A00A1844. TRAICOFF et al. v. WITHERS et al.
(544 SE2d 177)

RUFFIN, Judge.

On June 18, 1996, Reed Withers was killed by James Salery following a quarrel at the apartment complex where Withers lived. Reed Withers' wife, Susan, sued James Traicoff, the owner of the complex, and Carolyn Loudermilk, the apartment manager, for failing to exercise due care to protect her husband from Salery's attack. The defendants moved for summary judgment, and the trial court denied their motion. On appeal, the defendants allege that the trial court erred. We agree and reverse.

To prevail at summary judgment, the moving party must show that

> there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).[1]

So viewed, the record shows that the Witherses lived in an

---

[1] (Emphasis in original.) *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

apartment across the driveway from the apartment shared by Carolyn Smoots and her boyfriend, Salery. Loudermilk lived next door to Smoots and Salery. According to Susan Withers, Smoots and Salery had a volatile relationship. Ms. Withers testified on deposition that she heard Salery yell at Smoots and that Loudermilk told her Salery "was not a nice person and could be mean." In addition, Ms. Withers testified that she "believe[d] at one time [Loudermilk] told me [that Salery] could be violent."[2] Ms. Withers admitted, however, that she did not "actually have a recollection" of such conversation.

On the night of June 18, 1996, Salery was outside working on his truck. When Salery attempted to start his truck, it rolled backward before coming to a stop in front of the Witherses' apartment. When Reed Withers returned home, he parked next to Salery and demanded several times that Salery move "the goddamn truck." Evidently, Salery returned to his apartment and got a machete and a "stick."[3] Reed Withers followed Salery. While the two were standing in front of Salery's apartment, Loudermilk stepped between them and told both men to go to their respective apartments. According to Loudermilk, Reed Withers shook his fist in her face and told her that he wanted "the goddamn truck" moved. He then turned to Salery, called him a racial epithet, and ordered him to move the truck.

At this point, Loudermilk went inside her apartment, called 911, and told the dispatcher that her "neighbors are getting ready to fight." The dispatcher asked if anyone had any weapons, and Loudermilk responded, "No." Moments later, Loudermilk heard a loud thump. When she looked outside, she saw Reed Withers slumped next to her door. She called 911 a second time and requested an ambulance. Reed Withers apparently died at the scene.

Following her husband's death, Susan Withers sued Loudermilk and Traicoff,[4] alleging that they breached their "duty to intervene" and their "duty to warn."[5] The defendants, on the other hand, maintain that they breached no duty. We agree with the defendants.

As this Court recently recognized,

> [t]he general rule is that a landlord does not ensure a tenant's safety against third-party criminal attacks, and that any liability from such attacks must be predicated on a

---

[2] Loudermilk, on the other hand, testified that she was unaware of Salery raising his voice toward anyone or acting violently.

[3] Both parties assert that the "stick" was, in fact, a baseball bat.

[4] Susan Withers also sued Salery, but he did not move for summary judgment, and he is not a party to this appeal.

[5] Although Ms. Withers asserts several other causes of action including negligence per se and nuisance, all causes of action stem from defendants' alleged failure to keep the premises safe and, essentially, constitute a breach of the same duty to protect Reed Withers.

breach of duty to "exercise ordinary care in keeping the premises and approaches safe."[6]

"A landlord's duty to exercise ordinary care to protect tenants against third-party criminal attacks extends *only* to *foreseeable* criminal acts."[7] This is so because a landlord's liability is predicated upon superior knowledge of the existence of a condition that would subject a tenant to an unreasonable risk of harm.[8]

This case does not involve a prior criminal act that would make it foreseeable to the defendants that this type of crime would occur. Indeed, there is no evidence that any prior criminal attack had ever occurred much less that Salery was involved in an attack. Nevertheless, Ms. Withers contends that the defendants had reason to believe that Salery posed a threat to the tenants and that they failed to take reasonable steps to prevent the attack on Reed Withers. In order to prevail on this theory, Ms. Withers must point to some evidence that either Loudermilk or Traicoff had superior knowledge that Salery had violent propensities. This she failed to do.

Ms. Withers contends that the criminal attack was foreseeable because Loudermilk knew that Salery was "mean" and that he yelled at Smoots. But the fact that a person is unpleasant and/or yells does not put others on notice that the person is prone to deadly violence. Ms. Withers also testified that she "believed" that Loudermilk told her that Salery could be violent, but she had no actual recollection of the conversation. Although Ms. Withers is entitled to the benefit of any reasonable inference from the evidence, her equivocal testimony as to what Loudermilk might have told her is entirely too speculative to create a genuine issue of fact. Moreover, "[t]he exercise of ordinary care does not impose a duty to anticipate unlikely, remote, or slightly possible events."[9] Thus, even if Loudermilk believed that Salery could become violent, absent some evidence that Salery had previously injured another person, the defendants cannot be held liable for failing to anticipate and protect against the attack on Reed Withers. Accordingly, given the dearth of evidence that the attack on Reed Withers was foreseeable, the defendants had no duty to protect him.[10]

To the extent that Ms. Withers contends that the defendants breached a "duty to intervene," we note that a landlord's only duty is

---

[6] *Johnson v. Holiday Food Stores*, 238 Ga. App. 822, 823 (1) (520 SE2d 502) (1999).

[7] (Emphasis in original.) *Sturbridge Partners v. Walker*, 267 Ga. 785-786 (482 SE2d 339) (1997).

[8] See *Johnson*, supra (proprietor's liability for criminal attacks against invitees predicated upon superior knowledge).

[9] *Mills v. Jack Eckerd Corp.*, 224 Ga. App. 785, 786 (482 SE2d 449) (1997).

[10] See id.

to exercise ordinary care in keeping the premises safe.[11] We are unaware of any affirmative duty to intervene. Assuming such duty exists, however, the defendants did not breach this duty. Loudermilk attempted to send the two men home, and she called police when she believed a fight was imminent. Thus, she acted reasonably given the circumstances.[12] Even though Loudermilk did not tell the 911 operator that Salery was armed, this failure would not give rise to any liability. The defendants can be held liable only if Loudermilk's negligence was the proximate cause of Reed Withers' death.[13] Here, the undisputed evidence demonstrates that Salery attacked Reed Withers mere seconds after Loudermilk placed the 911 call. Accordingly, even if she had reported that Salery had a weapon, the result would have been the same as the police had no time to respond to the call. Because there is no evidence that the defendants breached any duty owed to Reed Withers, the trial court erred in denying the defendants' motion for summary judgment.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 27, 2000.

*Gray, Hedrick & Edenfield, L. Bruce Hedrick*, for appellants.
*Eastman & Apolinsky, Stephen D. Apolinsky, Lori A. Smith*, for appellees.

---

[11] See OCGA § 51-3-1.
[12] See *Modesitt v. Waffle House*, 213 Ga. App. 381, 382-384 (2) (444 SE2d 412) (1994).
[13] *Deese v. NationsBank*, 222 Ga. App. 275, 277 (2) (474 SE2d 18) (1996).
[1] See *Russell v. State*, 230 Ga. App. 546, 549 (4) (497 SE2d 36) (1998).